672 A.2d 319

**COMMONWEALTH of Pennsylvania**

**v.**

**James Edward BALOG, Appellant.**

Superior Court of Pennsylvania.

Submitted Aug. 14, 1995.

Filed Feb. 13, 1996.

Linda Chambers, Waynesburg, for appellant.

David F. Pollock, District Attorney, Waynesburg, for Commonwealth, appellee.

Before CAVANAUGH, JOHNSON and OLSZEWSKI, JJ.

JOHNSON, Judge:

In this appeal, we are asked to determine whether that portion of the animal cruelty statute, which pertains to animal fighting, is vague and overbroad in violation of the United States Constitution. For the reasons set forth below, we find that James Edward Balog has failed to carry his burden of showing that the statute is unconstitutionally overbroad. We also find that because Balog's conduct fell within the scope of the statute, he cannot complain of vagueness. Accordingly, we affirm the judgment of sentence.

Following trial, a jury found Balog guilty of cruelty to animals (gamecocks), pursuant to 18 Pa.C.S. § 5511(h.1)(3). The trial court sentenced Balog to a term of 54 months' probation, a $1,000 fine and ordered him to pay restitution. No post-sentence motions were filed. Balog then appealed to this Court. On November 8, 1995, we quashed the appeal because the trial transcript was not included in the certified record. Thereafter, Balog filed an application requesting reargument and/or reconsideration of that decision. By order dated January 11, 1996, we granted Balog's application, and we now consider the merits of his appeal.

On appeal, Balog raises the following three issues:

I. Whether 18 Pa.C.S.A. § 5511(h.1)(3) which prohibits owning animals for animal fighting is vague and overbroad in violation of the First and Fourteenth Amendments to the United States Constitution and Article 1, § 1 of the Pennsylvania Constitution?

II. Whether the trial court erred in denying [Balog]'s request to instruct the jury on the statutory exception to the crime of cruelty to animals concerning conduct occurring in a "normal agricultural operation," where [Balog] raised the exception as an affirmative defense?

III. Whether the trial court erred in qualifying a humane society officer with no practical experience or appropriate education as an expert at trial?

Brief for Appellant at 4.

First, Balog asserts that 18 Pa.C.S. § 5511(h.1)(3), which makes it a felony to own, possess, keep, train, promote, purchase or knowingly sell any animal "for animal fighting," is unconstitutional on its face because it is vague and overbroad, in violation of the United States and Pennsylvania Constitutions.

 Initially, we note that the trial court concluded that it could not rule upon the constitutionality of this statute because Balog failed to give proper notice to the Attorney General of the Commonwealth of Pennsylvania. *See* Memorandum to Record, dated May 11, 1995, at 2. While the record reveals that Balog did not notify the Attorney General of his intent to challenge the constitutionality of the statute, we find that no such notice was required in this case. Pursuant to Pa.R.A.P. 521(a), a party has the duty to notify the Attorney General of a constitutional challenge to a statute only "in any matter in an appellate court to which the Commonwealth or any officer thereof, acting in his official capacity, is *not* a party...." (Emphasis added). *See Commonwealth v. Hashem,* 363 Pa.Super. 111, 525 A.2d 744 (1987), *rev'd on other grounds,* 526 Pa. 199, 584 A.2d 1378 (1991); *Mark v. Commonwealth,* 135 Pa.Cmwlth. 150, 580 A.2d 901 (1990),

*aff'd,* 532 Pa. 209, 615 A.2d 337 (1992). Thus, we may address Balog's claim.

Balog contends that § 5511(h.1)(3) is overbroad. In addressing Balog's overbreadth challenge,

> we bear in mind that the judiciary must accord a strong presumption of constitutionality to the acts of the legislature as a coequal branch of government. To overcome this presumption, the person challenging the constitutionality of a statute shoulders the heavy burden of demonstrating that the statute clearly, palpably, and plainly violates the constitution.

*Commonwealth v. Stock,* 346 Pa.Super. 60, 67, 499 A.2d 308, 311–12 (1985) (citation omitted). A statute is overbroad if it "authorize[s] the punishment of constitutionally protected conduct...." *Commonwealth v. Stenhach,* 356 Pa.Super. 5, 25, 514 A.2d 114, 124 (1986), *appeal denied,* 517 Pa. 589, 534 A.2d 769 (1987). Here, Balog maintains that the statute in question is overbroad because it "unconstitutionally infringes his right to show gamefowl at fairs, poultry shows and other competitions based upon the appearance of the cock.... [T]he exhibition of gamefowl in organized events for that purpose is a method of expression and, as such, it is protected by the First Amendment of the United States Constitution." Brief for Appellant at 9.

Even assuming that the right to show gamefowl at a competition is constitutionally protected conduct, Balog could not be convicted pursuant to § 5511(h.1)(3) if he established that he owned the gamefowl for show purposes. Rather, the prohibited activity sought to be controlled by the statute is not the mere owning or possessing of gamefowl, but owning or possessing such fowl "for animal fighting." In order to convict a person under this statute, the Commonwealth must prove that a defendant owns or possesses the gamefowl for fighting purposes. Thus, Balog has failed to carry his burden of showing that the statute is unconstitutionally overbroad on its

face, as he could not be convicted for owning or possessing gamefowl for any purpose other than animal fighting.

In addition, Balog asserts that section § 5511(h.1)(3) is unconstitutionally vague because it permits the Commonwealth to combine several legal activities, namely, owning gamecocks and collecting cockfighting paraphernalia and publications, in order to convict him of illegal activity.

"A statute is unconstitutionally vague where it fails to provide reasonable notice of the conduct to the person charged with violating its prohibitions." *Commonwealth v. Gonzalez*, 403 Pa.Super. 157, 165, 588 A.2d 528, 532 (1991). "Importantly, 'the specificity of a statute must be measured against the conduct in which the party challenging the statute has engaged,' and in view of the specific facts of the case before us." *Id.* at 166, 588 A.2d at 533, quoting *Commonwealth v. Heinbaugh*, 467 Pa. 1, 4–5, 354 A.2d 244, 245 (1976). Thus, one may not successfully challenge a statute for vagueness when his conduct clearly falls within the prohibited acts set forth therein. *Id.; see also Commonwealth v. Tavares*, 382 Pa.Super. 317, 324, 555 A.2d 199, 202 (1989), *appeal denied*, 524 Pa. 619, 571 A.2d 382 (1989).

In a similar case, this Court recently addressed the question of whether § 5511(h.1)(3) is unconstitutionally vague. *Gonzalez, supra*. There, defendant was convicted of owning and possessing roosters for fighting purposes. Defendant claimed that this statute was "unconstitutionally vague because [it] fail[ed] to specify what constitutes an animal which is owned 'for animal fighting....' " *Id.* Defendant relied on his expert's testimony that "a fighting bird's physical characteristics, such as cut combs and wattles, may be shared by gamefowl raised for breeding or showing purposes." *Id.* However, we concluded that the statute was not unconstitutionally vague as applied to defendant's conduct. First, we reasoned that there is "no ambiguity in the phrase 'animal fighting[,]' " *id.* at 167, 588 A.2d at 533, which is defined as "[f]ighting or baiting any bull, bear, dog, cock or other creature." 18 Pa.C.S. § 5511(q). More importantly, we found that the following evidence, in

addition to the birds' appearance, established that the animals were intended or had already been used for fighting purposes:

> The gamefowl had wounds in the face, chest, leg and eye areas which were consistent with cockfighting ...; some of the wounds still had blood clots on them. Also found on [defendant]'s premises were sharp metal claw-like objects known as spurs which are fitted to the fighting rooster's leg to be used in fighting another rooster. The investigating police and [Society for the Prevention of Cruelty to Animals (SPCA) ] agent found wax which is used to attach the spur to the bird, special vitamins and hormones ... clippers and scissors, and a [fighting] pit.... Further, the roosters were found housed in the same manner as fighting cocks are kept, that is, in separate cages so as to prevent them from fighting each other.

*Gonzalez, supra,* at 167, 588 A.2d at 533. Accordingly, this Court held that the animal cruelty statute provided reasonable notice that the phrase "for animal fighting" applied to defendant's roosters. *Id.* Because defendant's conduct fell within the scope of the prohibited acts, we concluded that he could "not complain of vagueness." *Id.* at 168, 588 A.2d at 533–34.

In the present case, Balog contends that his situation differs from that in *Gonzalez.* Specifically, he alleges that his birds did not have scars or wounds with blood clots, and the police found no trophies, wax, clippers, scissors, hormones, vitamins or a fighting pit on the premises. Brief for Appellant at 16–17. However, after a review of the record, we find that the evidence presented by the Commonwealth established that Balog owned or possessed gamecocks for fighting purposes.

Specifically, the record reveals that Greene County Children and Youth Services received information that Balog's children had been injured by a fighting chicken. N.T., January 4, 5, and 6, 1995, at 258. Balog, however, told the caseworker that his children were injured in an accident on an all terrain vehicle. *Id.* at 261. Trooper Brian Burden went to the Balog home to investigate this matter. *Id.* at 8, 28. As he approached the Balog residence, he saw a number of cages and birds on leashes. *Id.* at 9. Thereafter, the officer obtained a

search warrant and returned to the property with several SPCA officers. *Id.* At that time, Trooper Burden discovered individually caged roosters, various hens located in a building at the rear of the property, and cages that contained several different birds. *Id.* at 10. Trooper Burden then seized seven birds because he believed they were "fighting birds." *Id.* He testified that these birds were altered for fighting in that they "had their combs and wattles cut and also the spike on the back of the legs had been sawed off." *Id.* The trooper also observed the birds' aggressive nature as they were removed from their cages. *Id.* at 11. Trooper Burden then requested another warrant to search Balog's residence for "implements of fighting birds." *Id.* The following day, the trooper conducted a search of Balog's house and seized a diary containing information concerning fighting birds, 36 magazines on fighting birds, and two sets of spurs. *Id.* at 13.

Further, Balog's neighbor, Joseph Intorre, testified that he had visited Balog and observed the birds that were raised as "fighting roosters." *Id.* at 76–77. Intorre also testified that in late 1992 or early 1993, he and Balog drove to a "chicken fight." *Id.* at 78. He stated that Balog brought one of his birds with them, and, when they arrived at the fight, the bird was fitted with hooks. *Id.* at 78–79. Thereafter, the bird participated in a fight and won by killing its opponent. *Id.* at 79. Based upon these facts, we find that Balog's conduct fell within the scope of § 5511(h.1)(3). We further conclude that this statute provided reasonable notice to Balog that his conduct was prohibited. Thus, like the defendant in *Gonzalez, supra,* Balog cannot complain of vagueness.

We also note that Balog asserts that the statute in question violates his rights under both the United States and Pennsylvania Constitutions. However, he has made no effort to explain how the state constitution differs from the protection afforded by its federal counterpart. In addition, Balog has failed to comply with the requirements set forth in *Commonwealth v. Edmunds,* 526 Pa. 374, 390, 586 A.2d 887, 895 (1991) (describing the four factors one must analyze when state constitution is implicated). As a result, we will not

490

address a state constitutional claim. *See Commonwealth v. Toro,* 432 Pa.Super. 383, 393 n. 10, 638 A.2d 991, 996 n. 10 (1994); *Commonwealth v. Lucas,* 424 Pa.Super. 173, 177, 622 A.2d 325, 327 (1993), *appeal denied,* 537 Pa. 648, 644 A.2d 733 (1994).

As his second issue, Balog contends that the trial court erred when it denied his request to instruct the jury regarding the "normal agricultural operation" defense. "Our standard of review of a decision denying a requested point for charge is well[-]settled. Jury instructions must be viewed in their totality to assess whether the charge accurately and adequately explains the relevant law to the jury and guides the jury in its deliberations." *Commonwealth v. Donahue,* 428 Pa.Super. 259, 277, 630 A.2d 1238, 1247 (1993), *appeal denied,* 538 Pa. 612, 645 A.2d 1316 (1994).

Balog claims that he maintained his birds in a manner that fell within the exception to § 5511(h.1)(3), which provides that "[t]his subsection shall not apply to activity undertaken in a normal agricultural operation." The phrase normal agricultural operation is defined as "[n]ormal activities, practices and procedures that farmers adopt, use or engage in year after year in the production and preparation *for market* of poultry, livestock and their products in the production and harvesting of agricultural ... crops and commodities." 18 Pa.C.S. § 5511(q) (emphasis added). Balog argues that an instruction on this exception should have been given because he considers his family farm to be an "agricultural operation." However, Balog presented no testimony establishing that he was in the business of raising the birds "for market." In fact, Mrs. Balog testified that the family did not sell any of the birds they raised. N.T., *supra,* at 203. Moreover, in his brief to this Court, Balog concedes that he "do[es] not ... engage in farming as a business." Brief for Appellant at 18. Accordingly, we conclude that Balog has failed to bring himself within the scope of the exception for "normal agricultural operation[s]." *See Commonwealth v. Barnes,* 427 Pa.Super. 326, 344, 629 A.2d 123, 132 (1993) (although defendants asserted neglect of horses was "normal agricultural operation," they

presented no evidence indicating that "they were in the business of raising horses to be sold for dog food or that they had formed the definite intention" of selling horses for that purpose). Because the charge adequately explains the relevant law to the jury, we find no error by the trial court.

■ Finally, Balog maintains, in essence, that the trial court erred when it admitted the expert testimony of SPCA Agent Gary Lovett because he was not qualified as an expert in the area of cockfighting. Balog argues that the agent "presented only vague claims of training in the area of gamecock fighting and presented absolutely no evidence of experience in the area of cockfighting." Brief for Appellant at 26.

■ "In Pennsylvania, a liberal standard for the qualification of an expert prevails. Generally, if a witness has any reasonable pretension to specialized knowledge he may testify[,] and the weight to be given to his evidence is for the fact[-]finder." *Commonwealth v. Long*, 425 Pa.Super. 170, 184, 624 A.2d 200 (1993), *appeal denied*, 535 Pa. 645, 633 A.2d 150 (1993). The "qualification of expert testimony lies within the sound discretion of the trial court and will not be reversed absent a clear abuse of that discretion." *Commonwealth v. Echevarria*, 394 Pa.Super. 261, 266, 575 A.2d 620, 623 (1990).

In the present case, the Commonwealth offered the agent as an expert witness "in the area of the features that are present with gamecocks," N.T., *supra*, at 121, to explain that the birds confiscated from Balog's property were groomed in a manner consistent with birds raised for fighting purposes. Agent Lovett testified that he has worked for the Pennsylvania SPCA for 16 years and attended seminars at which veterinarians and animal shelter employees explained to participants what they should look for when investigating birds used in cockfighting and how to handle them. *Id.* at 101. Further, he participated in "on-the-field" training with respect to cockfighting. *Id.* at 99–100. The agent has also participated in approximately 100 investigations that involved cockfighting, and has been qualified as an expert on that subject matter in 20 court cases. *Id.* at 100. Agent Lovett further explained

that birds raised for fighting purposes are more aggressive and are classified in two categories, Anglo or Latino. *Id.* at 101–02. Based on this testimony, the court qualified him as an expert. Thus, we find that the trial court did not abuse its discretion when it admitted the expert's testimony.

Based on the foregoing, we affirm the judgment of sentence.

Judgment of Sentence Affirmed.